**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RADLAX GATEWAY HOTEL, LLC, et al. | ) | Case No. 09-30047 (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Bruce W. Black, Presiding |
| | ) | |

**OBJECTION OF LAX ENTERPRISE, L.P. TO
DEBTORS' MOTION FOR AN ORDER: (A) APPROVING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING
AN AUCTION; (C) APPROVING ASSUMPTION AND ASSIGNMENT PRODECURES;
(D) APPROVING FORM OF NOTICE; AND (E) GRANTING RELATED RELIEF**

LAX Enterprise, L.P. ("LAX Enterprise"), by and through its undersigned attorneys, submits this objection (the "Objection") to the Debtors' Motion for an Order: (A) Approving Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief (the "Sale Motion") [Dkt. 206]. In support of this Objection, LAX Enterprise states as follows:

**INTRODUCTION**

1. By this Objection, LAX Enterprise seeks protective language in any order approving the Sale Motion (the "Bid Procedures Order") and the bid procedures approved thereby (the "Bid Procedures") that will preserve LAX Enterprise's recorded easement rights with respect to the property of Radlax Gateway Deck, LLC (the "Deck Property") sought to be sold in the Sale Motion. As currently drafted, the Sale Motion seeks approval of bid procedures to sell the Deck Property "free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against." This language could be construed to extinguish LAX Enterprise's easement rights with respect to the

Deck Property, even though the Court has no authority to do so; thus, the Bid Procedures Order and the Bid Procedures approved thereby should be modified to clarify that nothing in the Bid Procedures Order shall be construed to extinguish any easement rights that may exist on the Deck Property or any other real property assets to be sold pursuant to the Sale Motion.

2. LAX Enterprise further seeks protective language that the entry of the Bid Procedures Order will not determine in any way the validity of any release for any purchaser of the Debtors' assets ("Purchaser") as proposed by the Debtors' Joint Plan of Reorganization (the "Plan"),[1] through which the asset sale will be conducted, which determination should be reserved for Plan confirmation. The Plan contains language (in sections 10.02(a) and (b) and 10.03 and 10.04 thereof) which could be construed to release the Purchaser from future action by LAX Enterprise to enforce its easement rights post-closing/confirmation against such Purchaser (collectively, the "Purchaser Releases"). The Bid Procedures Order, by referencing the Plan and the Debtors' intent to seek its confirmation, may mislead potential bidders into believing that the Purchaser Releases therein have been approved as part of the sale, even though (as LAX Enterprise is prepared to show at confirmation) no legal authority exists for such releases.

3. LAX Enterprise further objects to the Debtors' proposed bid procedures order (the "Proposed Bid Procedures Order") on the following grounds: The order inappropriately gives the Debtors *carte blanche* right to modify the Bid Procedures to facilitate the sale, within their "sole discretion" after consultation *only* with the secured lenders in this case (Sale Motion, ¶20(m), (n)). Modifications to the Bid Procedures that affect the rights of third parties, including LAX Enterprise, must be subject to further approval of the Court. Moreover, the Proposed Bid Procedures Order denies third parties (other than bidders) the right to obtain information about

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

the Debtors' Assets; yet, such information may be necessary for a third party to protect or evaluate its rights in the course of the sale of such assets, including LAX Enterprise's effort to protect its easement.[2] The Bid Procedures Order and the Bid Procedures should provide third parties such as LAX Enterprise full access to information related to their interest in the Debtors' Assets.[3]

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

**A.    LAX Enterprise's Easement Rights**

5.   LAX Enterprise owns the real property and the building located at 9800 Sepulveda Boulevard in Los Angeles, California (the "Enterprise Building"). As owner of the Enterprise Building, LAX Enterprise is the beneficiary of an easement (the "Easement") for 180 parking spaces located on the Parking Land (as defined in the Sale Motion) owned by RadLAX Gateway Deck, LLC ("Gateway Deck").[4] *Rahimi Affidavit* ¶7.

---

[2]   For example, LAX Enterprise has repeatedly requested that the Debtors provide a copy of the updated ALTA Policy which is referenced in Section 4.2(a) of the Stalking Horse bid, so that LAX Enterprise can confirm consistency between that policy and the policy that existed at the time of the Debtors' acquisition of the Deck Property which evidences LAX Enterprise's easement rights. Yet, the Debtors have not yet provided a copy of that policy.

[3]   Insofar as the Court determines that any issues addressed herein should be determined during the plan confirmation process, LAX Enterprise expressly reserves the right to present at that time the arguments contained herein and any additional arguments. This reservation specifically includes a reservation of LAX Enterprise's right to object to the administrative claim of FBR Capital Markets & Co. receiving preferential treatment over the claims of other administrative claimants such as LAX Enterprise.

[4]   A copy of the Easement appears as part of group Exhibit 2 along with the related title policies showing the Easement's appearance as a recorded document (see note 5, infra). The Affidavit of Michael Rahimi in Support of LAX Enterprise's Motion for Order Granting and Requirement Immediate Payment of Administrative Expense Claim and Providing Other Relief (the "Rahimi Affidavit") is attached hereto as Exhibit 1. The exhibits to the Rahimi Affidavit have not been filed with the Court as they are not germane to this dispute.

3

6.     The Easement is recorded, "runs with the land," has existed since at least 1964, and adds critical value to the Enterprise Building by providing parking spaces for the building's actual or potential tenants or by providing LAX Enterprise with rental income from the rental of the parking spaces. The Easement appears on any title report for the Debtors' real property.[5] Moreover, the Easement by its terms exists pursuant to the Los Angeles Municipal Code which requires the maintenance of a certain number of parking spaces per square foot of commercial space. *See* L.A., Cal. Mun. § 12.21(A)(4)(c); *see also id.* § 12.26(E)(1)(b) (requiring off-site parking spaces to be maintained for certificate of occupancy to be valid); *see also id.* § 12.26(E)(5) (requiring as a pre-condition for a building permit or certificate of occupancy for buildings with off-site parking, a recording of a covenant running with the land for the benefit of the City of Los Angeles, providing that such owner or owners shall continue to maintain said parking spaces so long as the building or use they are intended to serve is maintained.)[6]

7.     The Debtors do not challenge the existence of the Easement as to a portion of the Deck Property; rather, they dispute only whether they have violated LAX Enterprise's rights thereunder. *See* Gateway Deck's Answers to LAX Enterprise's First Requests for Admission to RadLAX Gateway Deck, Admission No. 2 ("Gateway Deck admits only that a portion of the Parking Land is subject to the Easement"); Gateway Hotel's Admission, No. 2 (same).[7]

8.     Prior to its demolition (as described below), the parking spaces subject to the Easement were located on the first floor of a two-story parking structure. This parking structure

---

[5]    LAX Enterprise's 2003 title policy and one of the recorded documents setting forth the Easement are attached hereto as Exhibit 2. A copy of the Debtor's title policy issued at the time of their acquisition of the Deck Property is attached hereto as Exhibit 3. The Easement can be found in LAX Enterprise's policy as Parcel 2 and in the Debtors' policy in Schedule B (Exceptions to Coverage).

[6]    LAX Enterprise has served the Los Angeles Department of Building and Safety with copies of the Sale Motion and this Objection as the Debtors have failed to do so.

[7]    The relevant portions of the Debtors' Answers to LAX Enterprise's First Requests for Admission are attached hereto as group Exhibit 4.

was acquired by Gateway Deck in November 2007 at the same time debtor RadLAX Gateway Hotel, LLC ("Gateway Hotel") acquired the Radisson Hotel at Los Angeles International Airport ("Hotel").

9. As further evidence that the Debtors expressly acknowledged LAX Enterprise's Easement, pre-petition Gateway Hotel leased the Easement from LAX Enterprise for $40,000 per month under a lease dated May 1, 2008 whose term expired May 31, 2009 (the "Parking Lease").[8]

10. As described in the Sale Motion (¶¶9-11), the Debtors demolished the two-story parking structure and then Gateway Deck began to construct, but never completed, a new eight-level parking facility (the "New Parking Structure"). LAX Enterprise did not consent to the demolition of the former parking structure. The present unfinished condition of the New Parking Structure renders the parking Easement completely unusable.

**B.    The Objectionable Provisions Contained in the Sale Motion and the Plan**

11. The Debtors' proposed bid procedures contained in the Sale Motion contain the following objectionable provision:

> The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder. **Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title and interest in and to the Assets to be acquired shall be sold pursuant to the Plan free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against** (collectively, the "Transferred Liens"), with such Transferred Liens to be satisfied in accordance with the Plan.

---

[8]    A copy of the Parking Lease is appended hereto as Exhibit 5.

5

Plan at ¶20(e) (emphasis added). As set forth below, the Debtors cannot sell the Deck Property free and clear of the Easement as they propose in the current Bid Procedures.

12. Pursuant to broad releases contained sections 10.02(a) and (b), 10.03, and 10.04(b) of the Plan, LAX Enterprise could arguably be found to have released and been enjoined from enforcing all claims against the Purchaser,[9] even claims for trespass of the Easement that may arise after the closing of any asset sale or after confirmation of the Plan. *See, e.g.,* Plan at § 10.02(a)(c) (enjoining the enforcement against the Purchaser of "any encumbrance of any kind"). Bidders should clearly understand that the Bid Procedures Order in no way approves of such releases which, as LAX Enterprise is prepared to further demonstrate at confirmation, are impermissible.

C.  **LAX Enterprise's Administrative Claim**

13. In December 2009, LAX Enterprise filed its Motion For Order Granting and Requiring Immediate Payment of Administrative Expense Claim and Providing Other Relief (the "LAX Motion" or the "Motion") [Dkt. 104]. The LAX Motion seeks entry of an order granting LAX Enterprise an administrative expense claim from the Petition Date forward for all damages caused by certain Debtors' continuing trespass on the Easement, and requiring immediate payment of the accrued amount of such claim as well as continued monthly payments of such claim until the trespass has ended. In the alternative, the LAX Motion seeks the granting and immediate payment of an administrative claim under 11 U.S.C. §503(b) or, in the second alternative, a claim for adequate protection under 11 U.S.C. §363(e) to compensate for the Debtors' ongoing use of the Easement.

---

[9]     The Purchaser is a "Releasee" as defined in the Plan.

14. Discovery with respect to the LAX Motion is ongoing and the matter has been set for trial for November 8, 2010.

## DISCUSSION

**A.    The Debtors Cannot Sell the Deck Property Free and Clear of the Easement.**

15. The Sale Motion makes it abundantly clear that the Debtors seek to conduct the sale of their assets pursuant to 11 U.S.C. §§ 1123 and 1129 and not pursuant to 11 U.S.C. § 363 (Sale Motion, ¶20(h)).[10]  The Debtors cite no authority for the proposition that the Deck Property may be sold free and clear of easements under 11 U.S.C. §§ 1123, 1129 or otherwise, and none exists.  While 11 U.S.C. § 1123 permits a sale free and clear of "liens," it does not contain any authority to sell free and clear of easements:

> Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall… provide adequate means for the plan's implementation, such as [the] sale of all or any part of the property of the estate, either subject to or free of any **lien**, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate.

11 U.S.C. § 1123(a)(5)(D) (emphasis added).  The Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation."  11 U.S.C. § 101(37).  By its nature an easement is a stand-alone, recorded interest in property and not one intended to secure the payment or performance of a debt or an obligation (as would be a mortgage securing a loan)[11]; indeed, here, LAX Enterprise's Easement pre-existed the indebtedness of the secured creditors in this case (see Title Policies, Exhibits 2 and 3 hereto). Since it does not secure the payment or performance of an obligation or debt, the Easement does

---

[10]    LAX Enterprise expressly reserves a right to file a sur-reply if the Debtors later assert the right to sell free and clear pursuant to 11 U.S.C. § 363(f).

[11]    "An easement is a nonpossessory interest in the land of another; it is an incorporeal right that entitles its owner to use or enjoy the other's land, or to prevent the other property owner from using his or her land." 28 California Jur. 3d Easements and Licenses §1 (citations omitted).

7

not qualify as a "lien", and therefore may not be avoided in a Plan sale pursuant to 11 U.S.C. § 1123. *Cf. Gouveia v. Tazbir,* 37 F.3d 295, 299-301 (7th Cir. 1994) (holding that trustee could not sell estate property free and clear of restrictive land covenant recorded on title); *cf. In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996) ("[A] sale 'free and clear of liens and other interests' has no impact on restrictions of record that run with the land.").[12]

16. Put simply, the Debtors are seeking to use the "happenstance" of bankruptcy to accomplish what they cannot do under non-bankruptcy law, contrary to the Supreme Court's mandate that bankruptcy not effect a windfall: "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a 'windfall merely by reason of the happenstance of bankruptcy.'" *Butner v. U.S.* , 440 U.S. 48, 55 (1979) (criticism omitted). Under California law, the sale of the Deck Property would not extinguish the Easement. *See, e.g.,* California Civil Code § 811 (listing events (inapplicable here)that would extinguish an easement, but not listing sale or foreclosure as such an event).

17. Moreover, as noted above, the Easement and the parking spaces provided thereunder are required by the Los Angeles Municipal Code as a condition of LAX Enterprise obtaining or maintaining a certificate of occupancy for its Enterprise Building. By proposing to extinguish the Easement through a sale, the Debtors effectively seek to prevent LAX Enterprise from complying with such municipal regulations. Yet, the Debtors have no such authority to cause such non-compliance and indirectly undermine local law. 28 U.S.C. §959(b) (trustee required to "manage and operate the property in his possession as such trustee…according to the

---

[12] To the extent the Debtors rely on 11 U.S.C. 1141(c) as a basis to sell the Deck Property free and clear of the Easement, 11 U.S.C. 1141(c) does not authorize extinguishment of easements pursuant to a plan of reorganization. In any event, the Plan does not deal with the Easement, and therefore, the Easement cannot be extinguished pursuant to 11 U.S.C. 1141(c) even if that provision allowed as such, which it does not.

requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof"); *cf. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986) (trustee not permitted to transfer property through abandonment in contravention of non-bankruptcy environmental laws without first ensuring compliance with such laws); *In re Chaffee Aggregates, Inc.*, 300 B.R. 170 (Bankr. W.D.N.Y. 2003) (trustee required to comply with local zoning laws in managing estate property); *In re Lauriat's, Inc.,* 219 B.R. 648 (Bankr. D. Mass. 1998) (Chapter 11 debtors could not sell property without ensuring compliance with state law governing store closings, even if exemption would increase value of estate); *In re Prof'll Sales Corp.*, 56 B.R. 753, 764 (N.D. Ill. 1985) (bankruptcy court had no authority to allow debtor to reinstate operating permit previously revoked by EPA, even if permit increased value of estate for potential buyers, since to do so would expand debtor's property rights "beyond what they would be outside Chapter 11").

### B. The Bid Procedures Order Should Not Determine the Validity of the Purchaser Releases, Which Are In Any Event Not Confirmable.

18. The Bid Procedures Order should make clear that the Purchaser Releases proposed in the Plan, upon which potential bidders may rely, are not in any way determined or sanctioned by the Bid Procedures Order. As noted above, the Easement runs with the land and should therefore survive the sale of the Deck Property; thus, any Purchaser of the Deck Property who violates LAX Enterprise's rights under the Easement post-closing/confirmation will be committing a new, daily trespass against LAX Enterprise under California law.[13] The Purchaser

---

[13] "Trespass" is an unlawful interference with possession of property. *Girard v. Ball*, 125 Cal.App.3d 772, 788, 178 Cal.Rptr. 406, 414 (Cal.App. 2 Dist. 1981). Pursuant to the 1964 recording, LAX Enterprise will have an undisputed superior property and possessory right in the Easement over any Purchaser of the Deck Property. In fact, the Purchaser will have no possessory right in the Easement even as the Purchaser occupied it; hence, they will be trespassing on it. *Posey v. Leavitt*, 229 Cal.App.3d 1236, 1246 (Cal.App.4th.Dist. 1991) ("All plaintiff needed to do was to show a possessory right superior to the right of the trespassers"). Furthermore, the Purchaser's trespass will be a "continuing" trespass in that it occurs anew every day post-closing/confirmation, and may be abated (through completion of the unfinished parking facility). *Starrh and Starrh Cotton Growers v. Aera Energy LLC*,

9

Releases are so broadly worded that they could easily be construed to enjoin LAX Enterprise from enforcing such post-closing/confirmation rights against the Purchaser; yet, as LAX Enterprise is prepared to show at confirmation, such broad non-consensual releases of post-closing/confirmation third party claims against non-debtors in a liquidation context are unenforceable. *See, e.g., In re Berwick Black Cattle Co.,* 394 B.R. 448 (Bankr. C.D. Ill. 2008) (invalidating broad releases of non-bankruptcy law claims against third parties as proposed in debtors' liquidating plan); *cf. Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (N.D. Ind. 1996) ("[A] sale free and clear does not include future claims that did not arise until after the bankruptcy proceedings concluded."); *cf. Zerand-Bernal v. Cox*, 23 F.3d 159 (7th Cir. 1994)(bankruptcy court lacks jurisdiction to enjoin claims arising post-confirmation against non-debtors).

C. **The Bid Procedures Order Should Control the Debtors' Discretion and Protect Third Parties' Rights to Information .**

19. The broad discretion granted the Debtors in the current Bid Procedures Order would arguably authorize the Debtors to modify the terms of the Bid Procedures Order to facilitate a sale; thus, if the secured lender and the Debtors desired, they could delete third party protections, such as LAX Enterprise's Easement rights, in order to generate bids more favorable to the estate. There is no legal or equitable basis to grant the Debtors such broad discretion; the Bid Procedures Order should make clear that the protections therein or in bankruptcy law for third parties, including LAX Enterprise, cannot be modified without consent of the third party or further order of the Court.

---

153 Cal.App.4th 583 (Cal.App.5th.Dist. 2007) (holding that trespasses that are continuing and may be abated are continuing trespasses and constitute independent trespasses every day the trespass continues).

20. Likewise, the proposed language in the proposed Bid Procedures that "Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder" impermissibly overrides third parties' general legal right under Rule 2004 to seek information on a debtor's assets that may affect such parties' interests. Rule 2004 Federal Rules of Bankruptcy Procedure (any party in interest may seek documents related to the "acts, conduct, [or] property" of the debtor). The Bid Procedures Order and the Bid Procedures should require the Debtors to provide information to non-bidders to the extent such information relates to such parties' interest in the assets being sold, such as LAX Enterprise's Easement interest. As an exercise of this right, LAX Enterprise restates its request that the Debtors provide to LAX the ALTA Policy referenced in Section 4.2(a) of the Stalking Horse bid and related to the Deck Property which is presumably consistent with other title policies previously issued thereon showing the Easement and all other encumbrances on the Deck Property.

WHEREFORE, LAX Enterprise requests satisfactory language to the Bid Procedures Order and related Bid Procedures which makes clear that: (i) the transfer of the assets shall not be free of any easements encumbering such property, including without limitation any easement held by LAX Enterprise; (ii) nothing in the order determines, approves or sanctions any releases of any Purchaser (in the Plan or otherwise) with respect to claims that may arise against such Purchaser post-closing/confirmation, including without limitation any claims of LAX Enterprise against any Purchaser for trespass against the Easement; (iii) the Debtors' discretion in conducting the sale shall be subject to the provisions of the Bid Procedures Order or bankruptcy law protecting the rights of third parties who have interests in the assets being sold, including without limitation the Easement interest of LAX Enterprise; and (iv) the Debtors shall provide

Case 09-30047 Doc 233 Filed 07/08/10 Entered 07/08/10 13:33:12 Desc Main
Document Page 12 of 12

third parties, including without limitation LAX Enterprise, information and documents on the assets subject to the sale as they may relate to such parties' interest in such assets; accordingly, the Debtors shall forthwith provide LAX Enterprise with a copy of the March 17, 2010 ALTA Policy referenced in Section 4.2(a) of the Stalking Horse bid.

                                      Respectfully submitted,

                                      LAX ENTERPRISE, LP

Dated: July 8, 2010

                                      By:    */s/ Ryan T. Schultz*
                                              Counsel to LAX Enterprise, LP

N. Neville Reid (ARDC # 6195837)
Ryan T. Schultz (ARDC # 6288585)
FOX, HEFTER, SWIBEL, LEVIN & CARROLL, LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Ph: 312.224.1231
Fx: 312.224.1201

**Attorneys for LAX Enterprise, L.P.**